IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ANGELA CHRISTINE KLEIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 2:22-CV-04187-DGK-SSA |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This case arises from the Commissioner of Social Security's ("the Commissioner") denial of Plaintiff Angela Christine Klein's applications for disability insurance benefits ("DIBs") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1385. The Administrative Law Judge ("ALJ") found Plaintiff had several severe impairments, including asthma-COPD overlap syndrome and Alpha-1-antitrypsin deficiency, but she retained the residual functional capacity ("RFC") to perform a range of light work with certain restrictions. The ALJ ultimately found that Plaintiff could work as a production assembler, cashier, or office helper.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff applied for DIBs on August 24, 2020, and for SSI on September 9, 2020, alleging a disability onset date of June 20, 2019.  The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ.  The ALJ held a hearing and, on January 14, 2022, the ALJ issued a decision finding Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review on October 31, 2022, leaving the ALJ's decision as the Commissioner's final decision.  Judicial review is now appropriate under 42 U.S.C. § 405(g).

**Standard of Review**

The Court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors.  *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016).  Substantial evidence is less than a preponderance but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Id.*  In making this assessment, the Court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *Id.*  The Court must "defer heavily" to the Commissioner's findings and conclusions.  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close.").  The Court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome.  *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

2

Case 2:22-cv-04187-DGK   Document 12   Filed 12/05/23   Page 2 of 7

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Here, Plaintiff challenges the Step Three and Four findings. Plaintiff argues the ALJ erred by: (1) finding that her impairments did not meet or equal Listing 3.02A; and (2) formulating an RFC that failed to account for her weekly infusion therapies. Neither argument has merit.

### I. Substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or equal a medical listing.

Plaintiff first contends that the ALJ erred in finding that her impairments did not meet or equal a listing. More specifically, she argues that the ALJ only gave a conclusory analysis that failed to discuss how a breathing test she took before her onset date met Listing 3.02A. In what appears to be an alternative argument, Plaintiff also contends that the ALJ erred in failing to order a medical exam to determine whether her infusion therapies may equal a medical listing.

Plaintiff bears the burden of demonstrating that her impairments meet or equal a listing. *Schmitt v. Kijakzi*, 27 F.4th 1353, 1358 (8th Cir. 2022). This requires her to show an impairment meets "all of the listing's specified criteria." *Id.* at 1359 (quoting *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). In other words, "[a]n impairment that manifests only some of those

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) [her] impairments, alone or combined, are medically severe; (3) [her] severe impairments meet or medically equal a listed impairment; (4) [her] residual functional capacity precludes [her] past relevant work; and (5) [her] residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that she is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

3

criteria, no matter how severely, does not qualify." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). To prove equivalency, Plaintiff must "present medical findings equal in severity to all the criteria for the one most similarly listed impairment." *Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016). And it is not reversible error for the ALJ to fail "to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

The only specific listing Plaintiff challenges on appeal is 3.02A. This listing is for any chronic respiratory disorder other than cystic fibrosis. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02A. To meet this listing, Plaintiff had to have a spirometry[2] reading—or $FEV_1$—of 1.35 or less, and the test had to meet other validation requirements. *See Id.*; *see also Jones v. Astrue*, 619 F.3d 963, 970 (8th Cir. 2010). The listing requires there to be "at least three forced expiratory maneuvers during the same test session." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.0(E)(1). The listing further makes clear that the Administration "use[s] your highest $FEV_1$ value to evaluate your respiratory disorder under 3.02A . . . regardless of whether the values are from the same forced expiratory maneuver or different forced expiratory maneuvers." *Id*.

Here, the ALJ did not err in finding that Plaintiff did not meet or equal Listing 3.02A. On the issue of meeting the listing, the ALJ's analysis in the Step Three section of his opinion is somewhat truncated. R. at 38. But that section cannot be viewed in isolation. The ALJ provided an exhaustive thirteen-page, single-spaced opinion that carefully analyzed why Plaintiff's severe impairments were not disabling. R. at 32–44. In doing so, the ALJ specifically cited Plaintiff's two spirometry tests as well as the objective medical evidence that showed Plaintiff's impairments improved after medical treatments. R. at 40. This analysis plus the record evidence as a whole

---

[2] This is a breathing test that measures the ventilation of the lungs.

4

Case 2:22-cv-04187-DGK    Document 12    Filed 12/05/23    Page 4 of 7

supports the ALJ's conclusion that Plaintiff did not meet Listing 3.02A for several reasons. First, while Plaintiff had a spirometry reading of 1.26 at her pre-disability-onset-date test on March 13, 2019, this test does not indicate that Plaintiff was given at least three expiratory maneuvers as required by the regulations. *See Id.*; R. at 690, 693. This alone is a sufficient basis to reject the test. *See Nettleman v. Comm'r of Soc. Sec.*, 728 F. App'x 473, 476 (6th Cir. 2018); *Bowen v. Kijakazi*, No. 0:20-CV-122-JMH, 2021 WL 5097589, at *3 (E.D. Ky. Nov. 2, 2021); *Ross v. Comm'r of Soc. Sec.*, No. 2:18-CV-160, 2018 WL 6074469, at *4 (S.D. Ohio Nov. 21, 2018).

Second, even *assuming* this pre-disability-onset-date test was valid, Plaintiff soon thereafter received medical treatment that significantly improved her severe impairments. R. at 390, 396. Following this treatment, Plaintiff took another spirometry test that resulted in a reading of 1.46[3]—above the disabling level of 1.35. R. at 541. This one test occurred during the alleged disability period, and Plaintiff's treating physician noted that her use medication usage improved her symptoms and her "pulmonary function test did improve." R. at 486. So Plaintiff's highest $FEV_1$ of 1.46 demonstrates that Plaintiff does not meet Listing 3.02A. *See Belton v. Comm'r of Soc. Sec.*, No. 4:11-CV-00021, 2012 WL 4459033, at *4 (W.D. Va. May 30, 2012); *see also Smith v. Soc. Sec. Comm'r*, No. CV 16-00083, 2018 WL 1630963, at *11 (M.D. Tenn. Mar. 19, 2018); *Deane v. Colvin*, 247 F. Supp. 3d 152, 164 (D. Mass. 2017); *Cole v. Comm'r of Soc. Sec.*, No. 15-13292, 2016 WL 3647982, at *11 (E.D. Mich. June 17, 2016).

Like the ALJ's analysis that Plaintiff did not meet Listing 3.02A, his conclusion that Plaintiff did not equal a listing is also supported by substantial evidence. The record evidence cited above as well as later treatment records demonstrating improved symptoms shows that her impairments do not equal a listing either. R. 390, 396, 486–89, 499, 509, 781. And given this

---

[3] Except for the higher readings and a notation that Plaintiff's condition had improved, the second test report is nearly identical to the first test reports. So *assuming* the first test was valid, this one would also be valid.

substantial evidence that Plaintiff's severe impairments improved through use of medication as well as other record evidence showing her impairments were not disabling, the ALJ did not err in failing to order further examinations or tests to complete his Step Three analysis. *See Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) ("However, 'the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.'"); *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) ("'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'").

## II. Substantial evidence supports the ALJ's RFC assessment.

Plaintiff argues that the ALJ erred in formulating the RFC by failing to account for alleged one-hour weekly breaks that Plaintiff would have to take for medical treatments. According to Plaintiff, the ALJ should have also found that these treatments would cause disabling symptoms.

Plaintiff's argument is meritless. At bottom, Plaintiff asks the Court to do what it cannot: reweigh the evidence. *See Schmitt*, 27 F.4th at 1361. To be sure, as the ALJ acknowledged, Plaintiff proved that she had weekly clinical injections that last no more than an hour. R. at 41. But Plaintiff failed to show that these injections would cause her to miss work. For example, she could have the one-hour injections during lunch hour, before/after work, or on the weekends. *Brown v. Astrue*, No. 08-4026-CV-C-NKL-SSA, 2008 WL 4151613, at *2 (W.D. Mo. Sept. 2, 2008) ("The fact that a claimant requires regular healthcare appointments does not necessarily indicate she cannot work on those days . . . . In this case, nothing in the record indicated Brown could not arrange her medical appointments around a work schedule or that she would need to miss a full day of work for her appointments. The ALJ specifically considered possible absences when determining Brown's RFC."). And the record was replete with evidence that contradicted

6

her allegations that her post-procedure fatigue or other supposed symptoms were disabling. For example, Plaintiff's medical records routinely reflected that she reported no disabling fatigue or other disabling symptoms following injections. R. at 41, 267, 499, 509, 701, 736, 740–41, 770, 767–68, 811; *see Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004). Moreover, she engaged in various daily activities that undermined her allegations of disabling post-infusion symptoms. R. at 300–04; *see Swathout v. Kijakazi*, 35 F.4th 608, 611–12 (8th Cir. 2022); *Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016). In short, the ALJ did not err in failing to include Plaintiff's injections and alleged symptoms as disabling limitations in the RFC.

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  December 5, 2023  /s/ Greg Kays  
GREG KAYS, JUDGE  
UNITED STATES DISTRICT COURT